UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
AMBER TRESHNELL,

        Plaintiff,

        v.

TEN LIFESTYLE MANAGEMENT USA, INC., and TEN LIFESTYLE GROUP, PLC,

        Defendants.
---------------------------------------------------------------x

Case No.:

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Amber Treshnell alleges as follows:

## **INTRODUCTION**

1. Defendants are an international concierge service company that provide access to luxury travel and experiences for high-powered and wealthy individuals and corporate clients (employees and customers of large corporations). Plaintiff Amber Treshnell began working for Defendants in 2012 as the Business Development Director for North America, building Defendants presence in the American market from the ground up. Ms. Treshnell worked tirelessly for Defendants and was essential to growing Defendants' United States presence, from a few employees to over 400. Over the course of her employment with Defendants, Ms. Treshnell landed many lucrative and long-lasting contracts for Defendants. Ms. Treshnell's compensation was based, in part, on commissions. When Ms. Treshnell left the company in 2017, Defendants owed her hundreds of thousands of dollars in unpaid commissions that she had earned from deals she had previously closed. To date, Defendants have not paid her a dime of the unpaid wages that they owe her.

1

## JURISDICTION AND VENUE

2. Plaintiff Amber Treshnell brings this action against Defendants alleging violations of the New York Labor Law ("NYLL"), the California Labor Code ("Labor Code") and common law.

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1), (c)(1). Plaintiff is a citizen of New York State. Defendant Ten Lifestyle Management USA, Inc., is a corporation that is incorporated in the State of Delaware, whose headquarters is located in San Francisco, California. Defendant Ten Lifestyle Group, PLC is a publicly traded corporation that is incorporated in England and Wales with its headquarters in London, England.

4. Venue is proper in this District because Defendants have an office in New York City where Plaintiff worked for years, and the acts and omissions that give rise to the claims in this case took place in this District.

## PARTIES

5. Defendant Ten Lifestyle Management USA, Inc. is a corporation that is incorporated in the State of Delaware, whose headquarters is located at 149 New Montgomery Street, Suite 352, 4th Floor, San Francisco, CA, 94105.

6. Defendant Ten Lifestyle Group, PLC is a global travel and lifestyle concierge service company that is incorporated in England and Wales, is the owner and operator of Defendant Ten Lifestyle Management USA, Inc., and has its headquarters at 355 Euston Road, Bloomsbury, London, NW1 3AL, United Kingdom.

7. Defendant Ten Lifestyle Management USA, Inc. and Defendant Ten Lifestyle Group, PLC will be referred collectively as "Ten Group" or "Defendants."

8. Plaintiff Amber Treshnell ("Ms. Treshnell" or "Plaintiff") began working for Defendants on October 29, 2012 as the Business Development Director for North America. Ms. Treshnell's employment with Defendants ended on or around June 7, 2017. Ms. Treshnell principally resides in New York, New York.

**FACTS**

9. Ms. Treshnell began working for Ten Group as the Business Development Director for North America on October 29, 2012.

10. At that time, Ms. Treshnell worked out of Defendants' San Francisco, California office.

11. As the Business Development Director for North America, Ms. Treshnell was responsible for growing Ten Group's business by cultivating business relationships with potential clients, pitching Ten Group's concierge services, and closing sales contracts.

12. Ms. Treshnell successfully closed many multi-year contracts over the course of her employment with Ten Group.

13. Ms. Treshnell was not responsible for servicing any of the contracts that she closed – this work was handled by the account management and operation teams collectively.

14. Ten Group agreed to pay Ms. Treshnell a base salary of $115,000, plus commissions on all sales/contracts that she completed during her employment.

15. Ms. Treshnell's role was that of a commissioned salesperson.

16. Ten Group agreed to pay Ms. Treshnell her commissions every quarter.

17. After Ms. Treshnell closed a deal, she was paid commissions over a three-year period, during which Ms. Treshnell was not responsible for any work related to the contract. Ms.

Treshnell would only become involved with a client if there were additional / new sales opportunities.

18. Ten Group paid Ms. Treshnell 4% of the total value of a contract that she closed during the first year of the contract, 2% of the total value of a contract during the second year of the contract, and 1% of the total value of the contract during the third year of the contract.

19. In addition to the sales/contracts she personally closed, beginning in or around June 2015, Ten Group agreed to pay Ms. Treshnell a commission on all of the sales/contracts closed by her direct subordinate, Sarah Schultz.

20. Ten Group agreed to pay Ms. Treshnell 1% of the total value of a contract that Ms. Schultz closed during the first year of the contract, 0.5% of the total value of a contract during the second year, and 0.25% of the total value of the contract during the third year.

21. However, during the entire course of her employment, Ten Group failed to keep an up to date accounting of Ms. Treshnell's commissions.

22. Ten Group would not pay Ms. Treshnell unless she sent Ten Group's management a calculation of the commissions owed to her, which she generated herself.

23. Many times, throughout her employment, Ten Group would fail to pay Ms. Treshnell commissions in a timely manner. Often, Ten Group would fail to pay Ms. Treshnell commissions for a specific quarter, and only after she complained did they make those commission payments the following quarter.

24. For example, on May 5, 2017, Ms. Treshnell sent Ten Group a detailed commission calculation spreadsheet requesting to be paid the commissions she was owed for the first quarter of 2017 (Jan-March). On May 23, 2017, Ms. Treshnell followed up and complained that she had not been paid yet for the commissions owed to her. Ten Group assured her that it was a payroll

error and that it would be remedied. On May 31, 2017, Ms. Treshnell again complained because she still had not been paid for commissions owed during the first quarter of 2017. This is typical of Ten Group's business practices. It is also unlawful.

25. In early 2016, Ms. Treshnell moved from San Francisco, CA to New York, NY where she worked out of Ten Group's New York City offices.

26. During her time in New York City, Ms. Treshnell developed valuable business leads and closed substantial contracts for Ten Group.

27. On May 31, 2017, Ms. Treshnell notified Ten Group that she was resigning from the company.

28. On June 7, 2017, Ms. Treshnell's employment with Ten Group officially ended.

29. The last commission payment that Ms. Treshnell received from Ten Group was for the first quarter of 2017.

30. On June 16, 2017, Ms.Treshnell requested that Ten Group honor her employment contract and pay her the outstanding commissions that Ten Group owed. Specifically, Ms. Treshnell requested that Ten Group pay her the outstanding commissions from the second quarter of 2017.

31. In addition, Ms. Treshnell requested that Ten Group pay her all of the other outstanding commission payments owed to her. That is, the future quarterly commissions on trail-payments for all of the contracts that she closed during her employment.

32. Ten Group did not pay Ms. Treshnell any of the commission payments that she previously earned and came due after the first quarter of 2017.

33. Ten Group was required to pay Ms. Treshnell the full amount of her commissions at the time her employment ended, or, at the very least, when the commissions came due during the three-year commission period.

34. Ms. Treshnell estimates that Ten Group owes her over $500,000 in unpaid commissions.

35. Ten Group's failure to pay these commissions subjects it to liability under the NYLL, the Labor Code, and common law and entitles Ms. Treshnell to compensatory and liquidated damages, as well as attorneys' fees.

36. On July 24, 2020, Ms. Treshnell sent a letter to Defendants demanding that they provide her with an accounting of all commission payments that are due and unpaid, as required by the NYLL and the Labor Code.

37. To date, Defendants have not provided Ms. Treshnell with a full accounting of her unpaid commission payments, as required by the NYLL and the Labor Code.

38. Defendants have refused to pay Ms. Treshnell the commissions that they owe her.

39. Ms. Treshnell initiates this action to seek recovery of her unpaid wages.

**FIRST CLAIM FOR RELIEF**
**(Untimely Payment of Wages - N.Y. Lab. Law § 191)**

40. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

41. Plaintiff is a commissioned salesperson under the NYLL.

42. Defendants failed to pay Plaintiff her commissions in a timely manner.

43. Defendants failed to provide Plaintiff a proper accounting of all commissions due and unpaid as required by the NYLL.

44. Plaintiff seeks damages in the amount of her withheld wages, liquidated damages, pre-post judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (Illegal Deductions from Wages - N.Y. Lab. Law § 193)

45. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

46. Defendants illegally deducted money from Plaintiff's earned wages in violation of N.Y. Lab. Law § 193.

47. Plaintiff seeks damages in the amount of her withheld wages, liquidated damages, pre-post judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## THIRD CLAIM FOR RELIEF
### (Unpaid Wages – California Labor Code § 203)

48. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

49. Defendants failed to pay Plaintiff her earned commissions in a timely manner upon her resignation in violation of the Labor Code §§ 202-203.

50. Plaintiff seeks damages in the amount of her unpaid wages, pre-post judgment interest, attorneys' fees and costs, statutory penalties, and such other legal and equitable relief as this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF
### (Breach of Contract – Common Law)

51. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

52. By failing to pay Plaintiff all of the commissions she earned under her employment contract Defendants breached its employment contract with Plaintiff.

53. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, in the amount of the unpaid wages, and such other legal and equitable relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

(A) For compensatory and liquidated damages in an amount to be determined by the trier of fact;

(B) For reasonable attorneys' fees, interest, and costs of suit;

(C) For such other and further relief as the Court may deem just and equitable.

| Dated: October 21, 2020 | Respectfully submitted,<br>JOSEPH & KIRSCHENBAUM LLP |
|---|---|
| | By: */s/ Michael DiGiulio*<br>Michael DiGiulio<br>D. Maimon Kirschenbaum<br>32 Broadway, Suite 601<br>New York, NY 10004<br>Tel: (212) 688-5640<br>Fax: (212) 688-2548 |

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which they have a right to jury trial.